UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MELANIE CARBARY, | Civil Action No.: 20-11292 |
| | Honorable George Caram Steeh |
| Plaintiff | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

_____/

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 17, 18]**

Plaintiff Melanie Carbary appeals a final decision of defendant Commissioner of Social Security (Commissioner) application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act.  Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B).  After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion, ECF No. 18, be **GRANTED**;
- Carbary's motion, ECF No. 17, be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

I.   BACKGROUND

A.   **Background and Disability Applications**

Born May 9, 1985, Carbary was 30 years old at the time of her alleged onset date of October 1, 2015. ECF No. 13, PageID.226, 233. Carbary had past relevant work as a medical assistant and cook helper. *Id.*, PageID.72. Carbary claimed to be disabled from degenerative disk disease, bi-polar disorder, depression, carpel tunnel, fibromyalgia, arthritis in the back, hepatitis C, and liver issues. *Id.*, PageID.260.

After the Commissioner denied her disability application initially, Carbary requested a hearing, which took place in December 2018, and during which she and a vocational expert (VE) testified. *Id.*, PageID.82-107. In a March 2019 written decision, the ALJ found Carbary not disabled. *Id.*, PageID.57-74. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Carbary timely filed for judicial review. *Id.*, PageID.45-47; ECF No. 1.

B.   **The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.[1] *Id*. Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id*. If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id*. At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id*. The claimant bears the burden of proof throughout the first four steps, but the burden shifts to

---

[1] A severe impairment is one that "significantly limits the claimant's physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Carbary was not disabled. At the first step, she found that Carbary had not engaged in substantial gainful activity since her alleged onset date in October 2015. ECF No. 13, PageID.63.[2] At the second step, the ALJ found that Carbary had the following severe impairments: degenerative disk disease of the lumbar spine, degenerative joint disease of major joints, carpel tunnel syndrome, hepatitis C, obesity, major depressive disorder, generalized anxiety disorder, and borderline personality disorder. *Id.*, PageID.63. The ALJ found "non-severe or not medically determinable" Carbary's impairments of cholecystitis with cholecystectomy, pyelonephritis, fibromyalgia, and diabetes. *Id.* Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.*

Between the third and fourth steps, the ALJ found that Carbary had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she requires a sit and stand option at 15

---

[2] Carbary earned wages in 2015 and 2016 but the ALJ found that the "wages [were] well below the monthly-required amounts," thus did not constitute substantial gainful activity. ECF No. 13, PageID.63.

4

>minute intervals, and a hand-held device for ambulating and balance. [She] could occasionally balance, stoop, and crouch; but should avoid kneeling, crawling, or climbing ladders or stairs at the work site. Further, she should avoid reaching and lifting overhead with the bilateral upper extremities; but she could frequently handle and finger with the upper extremities. [She] could perform simple tasks on a sustained basis. Lastly, she would require a job with only occasional contact with supervisors, coworkers and the general public.

*Id.*, PageID.66-67. At step four, the ALJ found that Carbary could not perform her past relevant work. *Id.*, PageID.72. At the final step, after considering her age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were jobs that existed in significant numbers that Carbary could perform, including positions as an inspector and sorter. *Id.*, PageID.72-73. The ALJ thus concluded Carbary was not disabled. *Id.*, PageID.73.

## II.  ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and conformed with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is not a high standard; it is "more than a mere scintilla" and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a

5

conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Carbary argues that the ALJ erred by failing to differentiate between not medically determinable impairments and nonsevere impairments, and by not finding her fibromyalgia to be a severe impairment. ECF No. 17, PageID.1025-1027. Carbary also argues that the ALJ's RFC determination is not accurate, thus she "erroneously found work at step four and step five." *Id.*, PageID.1027-1034.

The Court finds that the ALJ's decision should be affirmed.

### B.

Carbary argues that the ALJ erred in her step two analysis by failing to distinguish between those impairments she found to be nonsevere and those that were not medically determinable. ECF No. 17, PageID.1025-1027. But she cites no authority showing that failing to make that distinction is consequential. In fact, courts have found no reversible error when substantial evidence supported the ALJ's assessment of the claimant's functional limitations. *See Soto v. Comm'r of Soc. Sec.*, No. 17-

10054, 2018 WL 2181098, at *8 (E.D. Mich. Mar. 2, 2018, *adopted*, 2018 WL 1466087 (E.D. Mich. Mar. 26, 2018)); *Rouse v. Comm'r of Soc. Sec.*, 2017 WL 163384, at *5 (S.D. Ohio Jan. 17, 2017), *adopted*, 2017 WL 1102684 (S.D. Ohio Mar. 24, 2017). Although "[i]t would certainly be better practice" for the ALJ to explicitly distinguish between nonsevere and not medically determinable impairments, "ordering a remand for clarification of that question when the ALJ's residual functional capacity finding would not change would be an exercise in futility." *Rouse*, 2017 WL 163384 at *5.

Carbary does not argue that the ALJ's failure to distinguish between nonsevere and not medically determinable impairments affected her RFC. Instead, she contends that the ALJ should have found her fibromyalgia to be severe or "at least a non-severe impairment." ECF No. 17, PageID.1025-1027. "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Carbary bears the burden of showing that her fibromyalgia is severe or medically determinable. *Id*. at 863; *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018).

Trying to meet her burden, Carbary says that her fibromyalgia was a "confirmed diagnosis" and that "her experience of associated symptoms

7

including widespread pain," generalized fatigue, joint stiffness, restless legs, and depression. ECF No. 17, PageID.1026-1027. She cites records in which fibromyalgia is listed as a diagnosis. *Id.*, PageID.1027 (citing ECF No. 13, PageID.618, 731, 737, 752). But a diagnosis alone says nothing about its severity. *Higgs,* 880 F.2d at 863 ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."); *Stankoski v. Astrue*, 532 F. App'x 614, 619 (6th Cir. 2013) ("[A] diagnosis of fibromyalgia does not equate to a finding of disability or entitlement to benefits."). Thus, Carbary's mere citation to records showing that she was diagnosed with fibromyalgia is not enough for her to sustain her burden of showing its severity. *Higgs,* 880 F.2d at 863; *Stankoski*, 532 F. App'x at 619.

And substantial evidence supports the ALJ's determination that Carbary's impairment of fibromyalgia was nonsevere or not medically determinable. The ALJ reasoned that her fibromyalgia was "responsive to treatment," caused "no more than minimal vocationally relevant limitations," and did not "result in more than minimal work-related restriction[s]" under the regulations. ECF No. 13, PageID.63. Despite finding that Carbary's impairment was not severe, the ALJ considered Carbary's alleged symptoms of fibromyalgia.

8

Addressing Carbary's back pain, the ALJ noted that in June 2017, an examining doctor noted "only mild tenderness to the lumbosacral spine." *Id.*, PageID.68-69. In August 2017, Carbary "reported overall improvement of her back symptoms," and Rahul Vaidya, M.D., recommended that she "increase her walking up to 45 minutes daily." *Id.* at PageID.68. Citing various medical records from Carbary's treating physicians, the ALJ also noted that she had "generally normal tone and strength in all muscle groups." *Id.* The ALJ concluded that given the lack of "further records of follow up with" Carbary's treating physicians, the record suggests "successful treatment of her back issues." *Id.*

The ALJ also discussed Carbary's complaints of bilateral knee pain, noting that although she "received referrals to pain management and rheumatology," the record was devoid of "reports from these disciplines." *Id.*, PageID.69. The ALJ described Carbary's doctors as attributing her knee pain to her obesity, and her December 2017 examination as showing only "mild tenderness of the left knee." *Id.* The ALJ also noted that Carbary "ambulated with a normal gait without use of handheld device and stable in standing, sitting, and supine position." *Id.*, PageID.70. "Examination of the lumbar spine revealed normal curvature, no evidence of paravertebral muscle spasms, no tenderness to percussion of the

9

spinous process, negative straight leg raise, and [she] could stand on one leg at a time without difficult." *Id.*

The ALJ's discussion about Carbary's upper extremities is also relevant to her claims that she had severe fibromyalgia. The ALJ noted that Gregory Sobol, M.D., performed carpal tunnel release surgery in November 2017 and January 2018, and an excision of soft tissue from the left index finger in July 2018. *Id.*, PageID.69. But an October 2017 examination showed "non-tender wrists and elbows with no redness, warmth, swelling, or nodules." *Id.*, PageID.70. Carbary's grip strength was equal bilaterally, she "could write with her dominate hand, and could pick up coins with either hand without difficulty." *Id.* And despite Carbary's complaints of pain and difficulty using her hands, "the record is devoid of any follow up visits or otherwise with Dr. Sobol or and other doctor regarding her carpel tunnel syndrome." *Id.*, PageID.69.

After considering all the medical evidence of record, the ALJ concluded that despite her complaints of continued "pain and symptoms related to her back, knees, [and] wrists," Carbary's "impairments appear[ed] to have responded to successful treatment." *Id.* The ALJ's analysis supports her finding that Carbary's fibromyalgia was nonsevere or not medically determinable. And even if the ALJ should have found Carbary's

fibromyalgia to be a severe impairment, that error would harmless because she considered the associated symptoms throughout the disability analysis. *Kestel*, 756 F. App'x at 598 (6th Cir. 2018) (holding that an ALJ commits no reversible error when finding an impairment nonsevere at step two if the ALJ considers the limiting effects of the nonsevere impairment throughout the remaining steps).

## C.

Next, Carbary argues that there are a "handful of issues the ALJ failed to consider in the [her] RFC, namely the limitation to sedentary work" with a "sit/stand option in 15 minute intervals with a held device for ambulating and balance, the limitation to 'simple tasks,'" and being off task and absent due to mental and physical impairments. ECF No. 17, PageID.1027-1034. Her arguments are unpersuasive.

Sedentary work generally involves carrying or lifting no more than 10 pounds; standing and walking no more than two hours in an eight-hour work day; sitting about six hours in an eight-hour work day; and no pushing or pulling. SSR 96-9p, 1996 WL 374185, at *6 (1996). Carbary argues that sit/stand option at 15-minute intervals would equate to her "standing and sitting an equal amount of time throughout the day, each for up to 4 hours." ECF No. 17, PageID.1029. But the RFC would give Carbary the *option* of

standing every 15 minutes, and she need not remain standing for 15 minutes at a time.  *See Kennedy v. Comm'r of Soc. Sec.*, No. CV 17-14206, 2019 WL 659011, at *6 (E.D. Mich. Jan. 15, 2019), *adopted*, 2019 WL 442130 (E.D. Mich. Feb. 5, 2019) ("[T]he RFC precluding sitting for more than 15 minutes at a stretch would allow Plaintiff to change from a sitting to standing position at 15 minute intervals but would allow standing/walking for anywhere from a moment *up to* 15 minutes.") (emphasis in original).  The Court thus finds that Carbary's claim that the RFC would require her to stand for up to four hours a day lacks merit.

Carbary asserts that the limitation of "'a hand-held device for ambulating and balancing' also does not fall within SSA's defined characteristics of sedentary work which requires the ability to lift up to 10 pounds."  ECF No. 17, PageID.1029.  She notes that the RFC would require her to work with one hand while she is standing because her other hand would be using an assistive device.  *Id*.  But this does not contradict SSR 96-9P, which states, "[A]n individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand."  1996 WL 374185 at *7.

12

Lastly, Carbary argues that the ALJ "failed to include any limitation in her RFC assessment which relate to" Carbary's severe mental impairments, absenteeism, and fibromyalgia. ECF No. 17, PageID.1030-1034. Carbary asserts that her "testimony along with medical records lend support for further mental limitations in the RFC." *Id.*, PageID.1030.

The ALJ noted that "with medication and treatment [Carbary's] mental status examination revealed a cooperative behavior, normal thought process, content, and psychomotor activity," as well as "normal attention, concentration, and speech with adequate impulse control and judgment." ECF No. 13, PageID.70.

An August 2017 medical progress note states that Carbary's mood, affect, thought content, psychomotor activity, and speech were "[w]ithin [n]ormal [l]imits." *Id.*, PageID.591-592. She had no hallucinations, her grooming/hygiene were average, and she was oriented to person, place, time, and self. *Id.* Carbary was "open and receptive" to the interventions provided. *Id.*, PageID.592. During her October 2017 Adult Mental Status Exam, Carbary's "attitude was cooperative and behavior agitated." *Id.*, PageID.625. She "showed no signs of psychosis, thought disorder, paranoia, delusions, hallucinations or urges to harm self or others," and she was oriented times three. *Id.* The medical source noted that given

13

Carbary's statements of caring for her children, "[o]ne could suspect that she could possibly be malingering the severity" of her impairments. *Id.*, PageID.626.

During examinations in December 2017 and January 2018, Carbary was "alert and oriented x3" with appropriate mood and affect. ECF No. 13, PageID.732, 746. She was able to "to perform basic computations and apply abstract reasoning" and had "no impairment of recent or remote memory, normal attention span and ability to concentrate." *Id.* In September 2018, Carbary said, "I feel good when [I']m on my medication." *Id.*, PageID.635. She was cooperative, had no hallucinations, average grooming/hygiene, normal appetite and sleep, and oriented to person, place, time, and self. *Id.*, PageID.639-640. Carbary's attitude/behavior, mood, thought process, thought content, psychomotor activity, attention/concentration, and speech were all within normal limits. *Id.* She also had adequate impulse control and judgment. *Id.*, PageID.656.

Carbary points to no evidence that undermines the ALJ's determination or that shows she requires a more restrictive RFC, which is her burden. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

**D.**

Carbary wove other meritless arguments into her challenge to the ALJ's RFC. First, she claims that the ALJ erred in not including in the RFC the VE's response to hypotheticals posed regarding time off task. ECF No. 17, 1031-1032. During the hearing, the ALJ asked whether any jobs exist for a claimant who is "off-task an excess of 20 percent, or would be consistently two or more days of work on a monthly basis." ECF No. 13, PageID.104. The VE testified that such limitations would be work preclusive. *Id.*, Page105.

The ALJ properly relied on the VE's testimony about a claimant with Carbary's age, education, work experience, and assessed RFC. "[T]he ALJ was not obligated to rely on the VE's testimony that was given in response to a hypothetical question that was based on" Carbary's unsubstantiated subjective complaints. *Walton v. Comm'r of Soc. Sec.*, 60 F. App'x 603, 611 (6th Cir. 2003); *see also Brewer v. Soc. Sec. Admin.*, 39 F. App'x 252, 254 (6th Cir. 2002) ("The ALJ is not obligated to include unsubstantiated complaints and restrictions in his hypothetical questions."). The ALJ "properly relied on the VE's response to a hypothetical question that was based on the limitations that were credited by the ALJ and

15

supported by substantial evidence on the record." *Walton*, 60 F. App'x at 611.

Next, Carbary's claim that the ALJ's RFC determination is not accurate because she did not consider Carbary's alleged severe impairment of fibromyalgia, which she claims causes widespread pain, fatigue, stiffness, and depression. ECF No. 17, PageID.10-26-1027, 1033-1034. This argument is unavailing for the reasons stated above.

Finally, the Court finds waived Carbary's argument that the "ALJ violated SSR 85-15 by not considering the effects of the above-mentioned limitations." ECF No. 17, PageID.1034. This argument is undeveloped and fails to supply any record citations or analysis. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (internal quotations omitted).

## E.

The Court lastly addresses Carbary's argument that the ALJ failed to cite jobs that existed in significant numbers that she could perform. ECF No. 17, PageID.1034-1036. She asserts that the jobs listed were limited

16

and isolated, and that the ALJ listed only two jobs when the Program Operations Manual System (POMS) § DI 25025.030 "instructs officials to cite three occupations." *Id.*, PageID.1035. Carbary's arguments are without merit.

The regulations mandate that the ALJ cite jobs that exist in significant numbers in the national economy that the claimant can perform. 20 C.F.R. § 404.1566. But, "it does not matter whether work exists in [Carbary's] area of residence or if a specific vacancy exists for [her]." *Moore v. Comm'r of Soc. Sec.*, No. 19-12753, 2021 WL 1556862, at *19 (E.D. Mich. Jan. 29, 2021), *adopted sub nom. Moore v. Saul*, No. 219CV12753TGBPTM, 2021 WL 1207355 (E.D. Mich. Mar. 31, 2021) (citing § 404.1566(a)). The Sixth Circuit has held that "[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant.'" *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (listing cases). The VE here identified two positions that Carbary could perform: inspector, with 43,000 jobs in the national economy; and sorter, with 36,000 jobs in the national economy. ECF No. 13, PageID.73, 103-104. This constitutes significant numbers.

Carbary also overlooks the fact that the regulation she cites states that an ALJ "may cite fewer than three occupations when it is clear that

17

jobs exist in significant numbers." *See* POMS § DI 25025.030(C)(1).  *See also Taskila*, 819 F.3d at 906 ("The manual, however, allows ALJs to cite fewer than three occupations when it is clear that jobs exist in significant numbers within fewer than three occupation(s).") (internal quotation marks and citations omitted).

The Court finds no error here, and the ALJ's decision should be affirmed.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Commissioner's motion ECF No. 18 be **GRANTED**; that Carbary's motion ECF No. 17 be **DENIED**; and the ALJ's decision be AFFIRMED under sentence four of 42 U.S.C. § 405(g).

|  |  |
|---|---|
| Dated: August 19, 2021 | s/Elizabeth A. Stafford<br>ELIZABETH A. STAFFORD<br>United States Magistrate Judge |

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And

only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 19, 2021.

                                 s/Marlena Williams
                                 MARLENA WILLIAMS
                                 Case Manager